**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ROBBIE J. HIGGINS,** | : | **No. 07cv622** |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| **v.** | : | |
| | : | |
| **BOROUGH OF TAYLOR,** | : | |
| **BOROUGH OF TAYLOR** | : | |
| **POLICE DEPARTMENT,** | : | |
| **OFFICER EDWARD FRESCOLN,** | : | |
| **CARL F. SIMINSKI, and** | : | |
| **MARY JOYCE SIMINSKI,** | : | |
| **Defendants** | : | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

**MEMORANDUM**

Before the court are defendants' motions for summary judgment (Docs. 36,

39). Having been fully briefed, the matters are ripe for disposition.

**Background**[1]

This case arises out of an incident that occurred on January 9, 2005. On that

date, Borough of Taylor, Pennsylvania, Police Officer Edward Frescoln observed

Plaintiff Robbie Higgins in the middle of a roadway in the Borough at 4:32 a.m.

(Defendants, Borough of Taylor, Borough of Taylor Police Department and Officer

---

[1]The court takes these facts from the defendants' statements of material facts. Plaintiff did not provide a separate response to the statements provided by defendants as required by Local Rule 56.1. Instead, plaintiff provided an "answer and opposition" to defendants' motion. (See Doc. 44). As such, the court will take the facts from the defendants' statements, but will examine the citations to the record that plaintiff makes in his brief and papers in opposition to the motion to determine what evidence exists to support plaintiff's position.

Edward Frescoln's Proposed Statement of Undisputed Material Facts (Doc. 38) (hereinafter "Borough Defendants' Statement") at ¶ 1). Plaintiff appeared to be extremely intoxicated. (Id. at ¶ 2).

Frescoln transported plaintiff to the Borough of Taylor Police Department Headquarters. (Id. at ¶ 3). Once at headquarters, Frescoln issued plaintiff a non-traffic citation for public drunkenness. (Id. at ¶ 4). Defendant Frescoln then told plaintiff he was free to leave. (Id. at ¶ 5). He inquired of plaintiff whether there was anyone who could come and pick him up from the station; plaintiff could not name anyone. (Id. at ¶¶ 6-7). Defendant Frescoln then offered to assist plaintiff in getting home, and plaintiff accepted the ride. (Id. at ¶¶ 8-9).

Plaintiff's residence was just across the street from the police department. (Id. at ¶ 10). Defendant Frescoln transported him there. (Id.). Plaintiff lived in an apartment which could be accessed by a set of stairs on the exterior of the building. (Id. at ¶ 11). Plaintiff did not tell Frescoln that there was another way to enter the apartment from the inside of the building. (Id. at ¶ 13). Defendant Frescoln thus escorted plaintiff to his apartment using the exterior stairway. (Id. at ¶ 11). Plaintiff fell while climbing these stairs and rolled from the stairs onto the asphalt below. (Id. at ¶ 14). Officer Frescoln attempted to prevent plaintiff from falling, but failed to do so. (Id. at ¶ 15). Plaintiff has no recollection of the events that occurred on this day. (Affidavit of Robbie Higgins, Exh. A to Plaintiff's Answer and Opposition to Defendants' Motion (Doc. 44)). He asserts that the exterior entrance to his

apartment, including the stairway and an attached porch, were poorly maintained and covered with ice and snow during winter months.  (Id.).  Plaintiff claims he "would not use the rear entrance to my residence during the winter months."  (Id.).

Plaintiff filed the instant complaint in the Court of Common Pleas of Lackawanna County, Pennsylvania on March 12, 2007.  (See Notice of Removal (Doc. 1) Exh. 2).  Defendants removed the complaint to this court on April 2, 2007.

**Jurisdiction**

Because plaintiff brings his claims pursuant to 42 U.S.C. § 1983, the court has jurisdiction pursuant to 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").  The court has supplemental jurisdiction over the plaintiff's state-law claims pursuant to 28 U.S.C. § 1367(a) ("In any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article II of the United States Constitution.").

**Legal Standard**

Granting summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  See Knabe v. Boury, 114 F.3d 407, 410 n.4

3

(3d Cir. 1997) (citing FED. R. CIV. P. 56(c)). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion. International Raw Materials, Ltd. v. Stauffer Chemical Co., 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party. Anderson, 477 U.S. at 248 (1986). A fact is material when it might affect the outcome of the suit under the governing law. Id. Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. Celotex v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. Id. at 324.

**Discussion**

The defendants seek summary judgment on several grounds. The court will

address each in turn, as appropriate.

### A. The Borough Defendants

The court will first address the motion brought by Defendants Borough of Taylor, Borough of Taylor Police Department and Officer Edward Frescoln. (See Doc. 36).

### i. Claims Against Officer Frescoln

Defendants argue that plaintiff has not produced evidence to support his claim that his constitutional rights were violated when he fell down the stairway while under the care of Defendant Frescoln. Plaintiff was not engaged in any sort of special relationship with the Defendant at the time of his injury, and no state-created danger theory of liability applies here. In any case, defendants contend that Defendant Frescoln is entitled to qualified immunity for his actions on the night of plaintiff's injury, since plaintiff has not established that any violation of his constitutional rights occurred.

Plaintiff's claims against Officer Frescoln are based on the defendant's failure to prevent him from falling down the stairway outside of his apartment. Though in general a plaintiff cannot establish a claim against a municipality for a failure to act, there are certain situations where such liability can arise. The Third Circuit Court of Appeals has described two such situations: "[f]irst, the state has a duty to protect or care for individuals when a 'special relationship' exists" and "[s]econd, the state has a duty when a 'state-created danger' is involved." Sanford v. Stiles, 456 F.3d 298,

304 (3d Cir. 2006). The court will address each of these situations in turn.

First, if the state enters into a "special relationship", "liability attaches under § 1983 when the state fails, under sufficiently culpable circumstances, to protect the health and safety of the citizen to whom it owes an affirmative duty." D.R. v. Bucks Area Vocational Technical School, 972 F.2d 1364, 1369 (3d Cir. 1992). A "special relationship" can exist "when the State takes a person into its custody and holds him there against his will, [because] the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." Deshaney v. Winnebago County Dept. Of Soc. Servs., 489 U.S. 189, 199-200 (1989). This duty arises because "the State's affirmative act of restraining the individual's freedom to act on his own behalf" deprives a prisoner of his liberty and invokes the protections of due process. Id. at 200. When a person voluntarily allows the state to take him into custody, such protections do not apply. See, e.g., Toriskey v. Schweiker, 446 F.3d 438, 445 (3d Cir. 2006) (noting that if a plaintiff voluntarily agrees to custody in a mental institution "the plaintiff's 'personal liberty was not substantially curtailed by the state in any way.'"). The special relationship exception is a "very limited" one, and generally "requires a custodial relationship." Sanford, 456 F.3d at 304 n.4.

Here, the parties disagree about whether plaintiff entered into a "special relationship" with Officer Frescoln when Frescoln arranged to take him home after issuing a citation. The evidence here indicates that Officer Frescoln issued plaintiff

6

a citation and then told him he was free to leave.  When plaintiff appeared to have no means of returning home, defendant offered him a ride, which plaintiff accepted. No evidence exists to indicate that Officer Frescoln limited plaintiff's freedom or told him that he was not free to leave.  Plaintiff has no memory of the event, and he has offered no witnesses to contradict Officer Frescoln's version of the events.  No evidence exists, therefore, to by which a jury could reject Frescoln's claim that plaintiff was not in his custody, but voluntarily accepted a ride home.  Since liability under the "personal relationship" theory lies only as a result of "the State's affirmative act of restraining the individual's freedom to act on his own behalf–through incarceration, institutionalization, or other similar restraint of personal liberty," a jury could not find Officer Frescoln liable on these grounds. Fialkowski v. Greenwhich Home for Children, Inc., 921 F.2d 459, 465 (3d Cir. 1990).

Liability can also attach if a plaintiff proves that a state-created danger existed.  This type of liability applies "where the state acts to *create* or *enhance* a danger that deprives plaintiff of his or her Fourteenth Amendment right to substantive due process."  Sanford, 456 F.3d at 304 (emphasis in original).  A plaintiff must prove four elements to prevail on such a claim: "(1) the harm ultimately caused was foreseeable and fairly direct; (2) a state actor acted with a degree of culpability that shocks the conscience; (3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm

brought about by the state's actions, as opposed to a member of the public in general; and (4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all." Id. Defendants argue that plaintiff cannot prevail on either of these theories.

The debate between the parties on the "state-created danger" theory focuses on the second element, whether Defendant Frescoln acted with a degree of culpability that "shocks the conscience." Defendants do not appear to dispute that injury was foreseeable given plaintiff's intoxicated condition and apparent inability to walk without assistance. Officer Frescoln's report of the incident relates that the officer first encountered plaintiff in the middle of Main Street in Taylor, Pennsylvania at 4:30 a.m. on January 9, 2005. (Police Report, Exh. A to Borough Defendants' Statement). The plaintiff appeared "extremely intoxicated" to Officer Frescoln; "he had a very difficult time walking straight and did fall in the middle of the street numerous times." (Id.). Plaintiff admitted to being "really" drunk when Frescoln confronted him, and the defendant took plaintiff into custody. (Id.). At Taylor Police headquarters, police issued plaintiff a citation for public intoxication. (Id.). While at headquarters, officers tried to give plaintiff a portable breathalyzer test, "but were unable . . . due to his intoxication." (Id.). At one point as officers attempted to administer the test, plaintiff fell off a chair and onto the floor. (Id.). Officer Frescoln issued the citation and "escorted" plaintiff home. (Id.). As Frescoln attempted to

8

assist plaintiff up the stairway to his second-floor apartment, "Mr. Higgins fell and rolled off from the 2nd floor hitting the asphalt head/face first." (Id.). Frescoln reported that he "attempted to keep a hold of Mr. Higgins as he was falling," but could not. (Id.). Realizing that plaintiff was injured, Frescoln reported that he "immediately" notified a dispatcher and requested emergency medical assistance. (Id.). The defendant examined plaintiff, finding that he had a pulse and was breathing, but that "he was bleeding severely from his head and face." (Id.). Because of the type of fall plaintiff experienced, Frescoln did not move him before medical assistance arrived. (Id.). Emergency medical technicians then transported plaintiff to the hospital. (Id.). The report also notes that "Mr. Higgins's parents were on scene and are aware of the incident." (Id.).

Here, evidence exists by which a jury could conclude that Officer Frescoln was aware of plaintiff's extreme intoxication and the danger that he would have faced if allowed to walk home unescorted. He reported that he had observed that condition, including plaintiff's inability to ambulate in a steady fashion. Indeed, he saw plaintiff fall down in the street several times, and found him unable to maintain his seat in a chair. There is also evidence by which a jury could conclude that the stairway in the back that plaintiff and Officer Frescoln used was slippery and dangerous. In his deposition testimony, plaintiff reported that ice often accumulated on the stairway in the back because "there was a rain gutter that hung and it would leak and it was always big piles of ice there." (Exh. A to Defendants' Brief (Doc. 47)

at 60). Because of this accumulated ice, plaintiff "used the front in the wintertime." (Id.). In an affidavit submitted in connection with his brief in opposition to defendants' motions, plaintiff indicates that pictures taken shortly after the incident here in question accurately reflect the sort of "snow and ice accumulation" that was frequent at the apartment during the winter. (See Exh. 2 to plaintiff's brief). A jury could also conclude from this evidence that plaintiff did not typically use the outdoor entrance during the winter, but instead entered the building from the front. (Id.). Moreover, taking all inferences in favor of the non-moving party, a jury could conclude that the dangerous nature of this stairway was obvious, and that the defendant would have had to notice that ice and snow had accumulated there.

The question here is whether the defendant's behavior in attempting to assist plaintiff up the stairs "shocked the conscience." Under these circumstances, Officer Frescoln had time to deliberate and determine what action would be appropriate in assisting plaintiff to return safely home. When "'actual deliberation is practical,'" a court is to determine whether conscience-shocking behavior using the "deliberate indifference" standard. A.M. v. Luzerene County Juvenile Det. Ctr., 372 F.3d 572, 579 (3d Cir. 2004). To demonstrate deliberate indifference, a plaintiff must present "evidence that the Defendants were deliberately indifferent to a substantial risk of harm to [plaintiff] and did nothing to prevent it." Id. at 587.

In this case, the evidence indicates that Officer Frescoln was aware of plaintiff's intoxication and his difficulties in walking. A jury could also conclude that

10

Frescoln was aware that the landing was slippery and that attempting to walk up the steps unaided in that situation would be dangerous to plaintiff. No evidence indicates, however, that he was aware that another entrance to plaintiff's apartment existed, and that plaintiff normally used that entrance. In any case, however, there is also no evidence that Officer Frescoln did nothing to attempt to prevent the injury that plaintiff suffered. Plaintiff cannot recall what happened immediately before he fell, and did not depose Defendant Frescoln about the circumstances of the accident. The only evidence before the court describing what happened, therefore, are the affidavit and police report provided by Defendant Frescoln. In both those documents, Frescoln avers that he attempted to assist plaintiff up the stairs and tried to prevent him from falling, but did not succeed in those efforts. Plaintiff lacks evidence that plaintiff "did nothing to prevent" his potential injury, and therefore offers no evidence by which a jury could conclude that Frescoln's behavior "shocks the conscience."

The difference between this case and Kneipp v. Tedder, a case where the Court of Appeals found that a plaintiff could prevail on a state-created-danger theory, is instructive. In that case, a husband and wife had spent an evening drinking at a tavern in Bucks County, Pennsylvania. Kneipp by Cusak v. Tedder, 95 F.3d 1199 (3d Cir. 1999). The couple were attempting to make their way home on foot, when they encountered a Philadelphia Police Officer. Id. at 1201. The plaintiff, Samantha Kneipp, was extremely intoxicated: "she smelled of urine,

staggered when she walked and, at times, was unable to walk without assistance."
Id. Her husband had been forced to carry her at times on the way home. Id. The
police officer stopped the couple for causing a disturbance on the highway. Id. He
questioned them separately. Id. Shortly thereafter, three other officers arrived. Id.
Samathana Kneipp's husband, Joseph, told these new officers that he was
concerned about his son, who was at home with a babysitter. Id. He asked the
officers if he could walk the rest of the way home, which was just down the block.
Id. The officers agreed, and Joseph left his wife in their custody, assuming they
would assist her to come home. Id. Samantha never arrived home. Id. Instead,
another officer found her almost two hours after the initial stop. Id. She was
unconscious, at the bottom of an embankment near the Kneipp's home. Id.
Evidence indicated that officers may have ordered Samantha to find her own way
home, and did nothing to assure that she arrived there. Id. at 1202 n.6-8.

The court reversed the district court's grant of summary judgment to the
defendants on the state-created-danger claim. The court found that Samantha
Kneipp's level of intoxication and demonstrated lack of coordination meant that her
injuries were foreseeable. Id. at 1208. The court also found the second element
satisfied. Id. The police officer, who the evidence indicated was aware of plaintiff's
condition and who took Samantha under his care and then allowed her to leave
without supervision, had "acted in willful disregard for Samantha's safety." Id. The
fact that the officer took Samantha into his custody and then allowed her to go

home unescorted also established "a relationship between the state and the person injured . . . during which the state places the victim in danger of foreseeable injury," satisfying the third element. Id. The court also found that the defendants had used their authority as police officers to make their situation more dangerous than it had been before their intervention. Id. Samantha Kneipp had been on her way home under her husband's care until police intervened, and allowing her to go home without her husband increased the risk she would be injured. Id.

The facts of this case are quite different, and demonstrate why summary judgment is appropriate for Defendant Frescoln on this claim. As did the officer in Kneipp, Officer Frescoln here recognized that plaintiff was intoxicated and perhaps presented a danger to himself. Like Samantha Kneipp, plaintiff had difficulty walking or standing without assistance, and fell down several times in the street. This visible intoxication caused Frescoln to intervene, as had the Officer in Kneipp. Unlike that officer, however, Frescoln, did not abandon the endangered plaintiff and allow him to make his own way home alone. Instead, after issuing him a citation, Frescoln attempted to deliver plaintiff safely home. The injury to plaintiff occurred while Frescoln was attempting to get plaintiff into his apartment. Plaintiff slipped and began to fall. Frescoln was unable to prevent the fall, but he called for immediate assistance and helped treat him. Such behavior does not demonstrate any willful disregard for plaintiff's safety. Thus, regardless of whether the plaintiff's evidence could satisfy the other two elements of a state-created danger claim,

13

plaintiff has not demonstrated the degree of fault necessary to satisfy the second element of the claim. Defendant Frescoln is therefore entitled to summary judgment.

Accordingly, the court will grant Defendant Frescoln summary judgment on plaintiff's claims. Plaintiff has not presented any evidence by which a jury could find the defendant liable under either a special-relationship or state-created-danger theory of liability. Officer Frescoln also argues, however, that he is entitled to qualified immunity. Since the court has concluded that no constitutional violation occurred, there is no need to address the qualified immunity argument. See Stanford, 456 F.3d at 313 (finding that "[b]ecause we find that no constitutional right was violated, we need not address the question whether Stiles was entitled to qualified immunity in the federal claim.").

### ii. Claims Against the Borough of Taylor and the Police Department

Defendants also insist that no evidence exists to support a claim against the Borough and the Borough Police Department. The defendants point out that *respondeat superior* liability does not exist under Section 1983, and argue that plaintiff has not advanced any evidence by which a jury could conclude that any municipal policy or custom, failure to supervise or failure to train caused his injuries. Though the court has found that no constitutional violation occurred, the court will nevertheless address the parties' arguments in the interest of completeness.

14

Under the standard articulated in Monell v. Dept. of Social Svcs of the City of New York, 436 U.S. 659 (1978), "local governing bodies . . . can be sued directly under §1983 . . . where, as here, the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Monell, 436 U.S. at 690. Thus, "[a] public entity . . . may be held liable for the violation of a constitutional right under 42 U.S.C. § 1983 only when the alleged unconstitutional action executes or implements policy or a decision officially adopted or promulgated by those whose acts may fairly be said to represent official policy." Reitz v. County of Bucks, 125 F.3d 139, 144 (3d Cir. 1997). Liability exists when "'there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation.'" Brown v. Muhlenberg Twp., 269 F.3d 205, 214 (3d Cir. 2001) (quoting City of Canton v. Harris, 489 U.S. 378, 385 (1989)).

Plaintiff does not point to any evidence of a municipal policy or custom that caused his injuries, but instead argues that "Officer Frescoln's actions in placing Plaintiff in harm's way, were the actions of the municipality of which he was an agent and were done with the knowledge and acquiescence of police Chief Derenick, who was at the police station while Plaintiff was there detained." (Doc. 47 at 8). The court rejects this argument, since assigning Officer Frescoln's actions to the city for which he worked as an agent would be to assign *respondeat superior* liability to the Borough, which is prohibited by Monell. Moreover, though the court

might find that the Chief Derenick's acquiescence to the decision to send plaintiff home represented an official policy or custom, the court has already found that the source of plaintiff's constitutional injury came not from the decision to send him home, but from the decision to allow him to enter his apartment by using a slippery set of stairs. Plaintiff does not point to any evidence that establishes that Chief Derenick participated in that decision. As such, no official policy or custom exists that led to plaintiff's injury, and no municipal liability can be found on those terms.

The plaintiff could still prevail, however, if he demonstrated a failure-to-train on the part of the municipality. The Supreme Court has held that "[o]nly where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." City of Canton v. Harris, 489 U.S. 378, 389 (1989). Further, "[w]hen a plaintiff alleges that a municipality has not directly inflicted an injury, but has caused an employee to do so, stringent standards of culpability and causation must be applied to ensure that the municipality in a § 1983 is not held liable solely for the conduct of its employee." Reitz v. County of Bucks, 125 F.3d 139, 145 (3d Cir. 1997). These strict standards exist because "in enacting § 1983, Congress did not intend to impose liability on a municipality unless *deliberate* action attributable to the municipality itself is the 'moving force' behind the plaintiff's deprivation of federal rights." Board of Commissioners of Bryan County, Oklahoma v. Brown, 520 U.S.

16

397, 399 (1997) (emphasis in original).

Thus, to prove a constitutional violation based on a failure to train, the plaintiff must provide evidence "that the training deficiency actually caused the injury." Reitz, 125 F.3d at 145. The Third Circuit Court of Appeals has emphasized that "[e]stablishing municipal liability on a failure to train claim under § 1983 is difficult. A plaintiff pressing a § 1983 claim must identify a failure to provide specific training that has a causal nexus with their [sic] injuries and must demonstrate that the absence of that specific training can reasonably be said to reflect a deliberate indifference to whether the alleged constitutional deprivations occurred." Id. Here, plaintiff–who did not provide a separate statement of facts with references to the record–simply avers in his brief that "[t]he evident failure of the Borough to properly train its employees and/or Officer Frescoln, allowed Offficer Frescoln to place Plaintiff in danger, which amounts to deliberate indifference to Plaintiff's rights." (Plaintiff's Brief at 8). He does not point to any specific failures in training, and does not attempt to connect his injuries to such failures. See, e.g., Freedman v. City of Allentown, 853 f.2d 1111, 1117 (3d Cir. 1988) (finding that "[m]ere conclusory allegations, such as here, that the defendants deliberately elected not to train are not enough to support a constitutional claim."). Thus, plaintiff has provided no evidence by which a jury could conclude that specific failures in training constituted a deliberate indifference to potential constitutional violations.

Plaintiff might also prevail if he could demonstrate that his injuries were a

result of a failure-to-supervise on defendants' part. A plaintiff seeking to prevail on a failure-to-supervise claim must show that "a constitutional violation result[ed] from 'deliberate indifference to the constitutional rights of [the municipality's] inhabitants.'" Groman v. Township of Manalapan, 47 F.3d 628, 637 (3d Cir. 1995). Thus, the plaintiff "must not only identify a specific supervisory practice that the defendant failed to employ" but "must also allege 'both (1) contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents, and (2) circumstances under which the supervisor's inaction could be found to have communicated a message of approval.'" C.H. v. Oliva, 226 F.3d 198, 202 (3d Cir. 2000). The only conceivable involvement of the Borough in decisions that may have led to a denial of plaintiff's constitutional rights came when Police Chief Derenick allowed plaintiff to take plaintiff home rather than have him confined to jail. The injury that plaintiff suffered, however, came not because he was escorted home while intoxicated, but because Officer Frescoln escorted plaintiff to his apartment via an unsafe route. Plaintiff offers no evidence that Chief Derenick had any knowledge of the route that plaintiff would follow home, or that Officer Frescoln had a pattern of endangering persons he was assigned to supervise. No evidence exists to show that the Chief was deliberately indifferent to a likelihood that plaintiff would fall while in Frescoln's care. As such, summary judgment is appropriate for the municipality on this claim. The court will therefore grant the

18

defendant municipality's motion for summary judgment on all of plaintiff's claims.[2]

### B. Siminskis' Motion

Defendants Mary Joyce and Carl Siminski also seek summary judgment on the claims against them. The Siminiskis were the plaintiff's landlords. These claims are state-law claims, and are part of this case because the court exercised its supplemental jurisdiction to hear them. No argument can be made that the Siminskis are state actors, or that federal law would need be applied to adjudicate their claims. Thus, even if the case were to come to trial in this court, the court could offer no more resources or expertise than a state court could to evaluate plaintiff's negligence claims. The court has jurisdiction to hear state law causes of action only because of the supplemental jurisdiction granted this court pursuant to 28 U.S.C. § 1367(a) ("In any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other

---

[2]The Borough of Taylor Police Department also seeks summary judgment, arguing that plaintiff has no evidence that could establish liability for the Department. In relation to the Borough of Taylor Police Department, plaintiff argues that "the department is a duly authorized entity of the Borough, which must be held accountable for their actions and is therefore, a suable entity." (Brief in Opposition at 8). Beyond that, however, he does not point to any municipal policy or custom, nor to any failure to train on the part of the police department. Instead, plaintiff appears to impute respondeat superior liability to the department in the same ways he does to the Borough. He likewise offers no evidence of a policy or custom, or failures in training or supervision, that led to plaintiff's injuries. In any case, a suit against a police department is a suit against a division of the municipality itself, and thus a suit against both entities is duplicative. See Bonenberger v. Plymouth Township, 132 F.3d 20, 25 n.4 (3d Cir. 1997). As such, summary judgment is appropriate for the Police Department as well.

claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."). Federal law allows a district court to dismiss any remaining state-law claims if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3); see, e.g., Mark v. Borough of Hatboro, 856 F. Supp. 966, 976 (E.D. Pa. 1994) (finding that "[b]ecause summary judgment is being granted to each defendant as to the only federal claim, this Court may decline to exercise jurisdiction over the pendant state claims.").

Here, we have dismissed all of the federal claims in this case, and the only remaining matters are simple tort claims under well-settled Pennsylvania law. Federal courts have no interest in adjudicating such state-law claims, and we will decline to exercise our jurisdiction to hear them. See Borough of West Mifflin v. Lancaster, 45 F.3d 780, 788 (3d Cir. 1995) (holding that "where the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so.").

**Conclusion**

For the reasons stated above, the court will grant the defendants' motions for summary judgment. An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ROBBIE J. HIGGINS,** | : | **No. 07cv622** |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| **v.** | : | |
| | : | |
| **BOROUGH OF TAYLOR,** | : | |
| **BOROUGH OF TAYLOR** | : | |
| **POLICE DEPARTMENT,** | : | |
| **OFFICER EDWARD FRESCOLN,** | : | |
| **CARL F. SIMINSKI, and** | : | |
| **MARY JOYCE SIMINSKI,** | : | |
| **Defendants** | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## ORDER

**AND NOW**, to wit, this 27th day of May 2009, the defendants' motions for summary judgment (Docs. 36, 39) are hereby **GRANTED**. The Clerk of Court is directed to **CLOSE** the case.

BY THE COURT:

s/ James M. Munley
JUDGE JAMES M. MUNLEY
United States District Court

21